IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| RANDOLPH COUNTY EX RE. AND TO THE USE OF JERRY SWARTZ AND RANDOLPH COUNTY AND JERRY SWARTZ | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:12 CV 78 RWS |
| JOHN RICHARD TREGNAGO, *in his official and individual capacity,* AND OLD REPUBLIC SURETY COMPANY | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Defendant John Richard Tregnago is the Assessor of Randolph County, Missouri. Plaintiff Jerry Swartz alleges in his complaint that Tregnago's appraisals of Swartz's real and personal property violated Swartz's constitutional rights. Tregnago has filed a motion for summary judgment. Because Swartz cannot establish his constitutional claims I will grant Tregnago's motion for summary judgment.

*Background*

Plaintiff Swartz is a business man who owns and operates several businesses in Randolph County. Swartz owns both real property and personal property which is subject to Randolph County property taxes. Defendant Tregnago is and has been the elected county Assessor for Randolf County since 1985. The Assessor's Office generates appraisals of real and personal property. Appraisals are calculated by using an automated cost system, unless and until an

assessment is appealed. This approach is intended to show the replacement cost of the property.

In this lawsuit, Swartz claims that his equal protection rights under the Fourteenth Amendment and his free speech rights under the First Amendment of the United States Constitution were violated by Tregnago's appraisal of Swartz's real property (his residence) in 2007 and 2009 and the appraisal of his personal property in 2010.

*The 2007 appraisal of Swartz's house*

Randolph County has more than 14,000 real property parcels. In assessment years, the Assessor's Office sends out notices of an increase in property value to 1,400 to 1,800 tax payers. Roughly five percent of those taxpayers contact the Assessor's Office for an explanation of the increased assessment. In 2007, Randolph County conducted its biannual reassessment and increased the assessment on 10,154 properties, the majority of which were residential. Swartz's residence was one of those properties. The assessment of Swartz's house was raised from $455,376 to $592,073.

Swartz's residence is located on eleven acres of property in Moberly, Missouri. It is a one-and-a-half story house constructed in 2000. The base area of the house is 2,860 square feet, with an additional 1,200 square feet above the first level, for a total of 4,060 square feet above grade. The house also has a full basement. The house has an 874 square foot attached garage and a detached 960 square foot garage. In addition, the property has a 1,700 square foot patio and approximately 8, 000 square feet of concrete drive which connects the entrance to the property to the front of the house with a circle drive and continues to the attached and detached garages. The property also has a built in swimming pool.

After Swartz received the assessment, he appealed it to the Randolph County Board of

Assessment. The Board found in favor of Swartz and reduced the assessment to $547,350. Swartz appealed the Board's decision to the State Tax Commission, which ruled in favor of Swartz and further reduced the assessment to $438,000.

Tregnago's Appraiser's Report which was submitted in the appeals process stated that he used the comparable sales approach to establish the value of the Swartz residence. That report used as a comparable residence the "Wilson property" located in Moberly approximately four miles from the Swartz property. This house was built in 1987 and had improvements made in 1994. The house sits on 9.7 acres of land and has an above grade square footage of 3,013 compared to Swartz's 4,060 square feet. The report stated that the house sold in 2006 for $610,000 which included a fair trade of land valued at $369,000 and a balance of $241,000 for a total of $610,000. A cost approach valuation of the Wilson property set the value at $589,935. Tregnago adjusted the value of the Swartz property based on the difference in the characteristics of the Wilson property and the Swartz property. In the report and in testimony at the State Tax Commission appeal hearing, Tregnago stated that Wilson provided him with the sales information concerning the Wilson property. At his deposition for this lawsuit in 2014, Tregnago testified that the Wilson property was listed on the Multiple Listing Service for $610,000 but that Wilson would not tell Tregnago the sales price.

At the appeal hearing Swartz presented the report and testimony of his own appraiser, James K. Stone, that there were no comparable properties to Swartz property in the Moberly market due to the quality, design, appeal, and nature of construction of the Swartz property. Instead, he presented comparable sales from Columbia, Missouri, thirty-five miles from Swartz's house. Like Tregnago, Stone adjusted the comparable properties based on their different

characteristics and reached a valuation of $438,000 for the Swartz residence. The State Tax Commission determined that Swartz's evidence was substantial and persuasive to overcome the presumption of correct assessment by the Randolph County Board of Assessment and set the value of Swartz's house at $438,000.

Swartz claims in his compliant that Tregnago's assessment of his property was unfair. Swartz claims that Tregnago violated Swartz's equal protection rights in how assessed his property. In support of this claim Swartz asserts that Tregnago falsely stated in his appraisal report and testimony at the State Tax Commission hearing that Wilson provided Tregnago information about the sale of the Wilson property. In support of this claim Swartz has submitted an affidavit from Wilson, dated January 2011, in which Wilson denies he provided Tregnago or any employee of Randolph County with sales information regarding the Wilson property. Swartz argues that the Wilson property was not a proper comparison because it involved a swap of real property as well as a cash payment. Swartz also asserts that Tregnago discounted Stone's valuation of the Swartz property because Stone used comparable sales in Columbia. Tregnago argued that he believes sales in Columbia are not comparable to sales in Moberly based on different market factors. Tragnago stated that sales in Hannibal and Kirksville would be comparable because those markets are similar to Moberly. Swartz claims his equal protection rights were violated because Tregnago stated in his deposition that, other than in the Swartz appeal, he has never criticized an owner or appraiser in an appeal for using a comparable sale in a different city or county than the subject property. However, there is no evidence in the record that anyone else on appeal had ever engaged an appraiser who used comparable properties in another city or county generally, or Columbia specifically. Nor has Swartz presented any

evidence that his equal rights were violated because Tregnago did not make false statements or perjure himself in connection with any other taxpayer's appeal. (This is an odd proposition. However, since Swartz is attempting to prove Tregnago treated him differently that any other similarly situated taxpayer, he must come forward with evidence to support that claim. Whether Tregnago made false statements in the Swartz case is in dispute. Whether he did or didn't is not the issue because Swartz's claim is based on the allegation that he was treated differently than other taxpayers.)

Swartz claims that Tregnago was purposely over-appraising Swartz's property. Swartz alleges that Tregnago's actions in the 2007 appeal and in future assessments in 2009 and 2010 were based on personal animosity towards Swartz .

*The 2009 appraisal of Swartz's house*

As in 2007, Randolph County conducted its biannual reassessment and increased the assessment on 4,201 properties, the majority of which were residential. Swartz's residence was one of those properties. The assessment of Swartz's house was raised from $438,000 to $584,098. This appraisal was based on the recent sale of a residence on Trails End, less than a mile from the Swartz residence. The Trails End property listing stated the size of the residence was 5,100 square feet with less than 3,800 square feet above grade. The size of this property was smaller than Swartz's 4,060 square feet above grade. The assessed value of this house had been raised in 2007 from $415,438 to $536,004. [Doc. # 47, Ex. A at 330]  The house was appraised for the Bank of Cairo and Moberly for $700,000 on June 2, 2008. [Doc. # 52, Ex. B at 4] The Trails End property sold for $760,000 in July 2008. [Doc. # 47, Ex. A at 330]

Based on the recent sale of this property, Tregnago raised the assessment of Swartz's

property from $438,000 to $584,098 using his normal methodology and making adjustments for the differences in the properties. [Id.]

Swartz appealed the 2009 appraisal to the Randolph County Board of Equalization, and then to the State Tax Commission. Tregnago hired an appraiser, Allan Moore, to support his assessment at the STC Swartz appeal.[1] Tregnago provided the appraiser of the Swartz property with information about "two large sales for your determination if wanted" of properties in Moberly that sold in 2008 but acknowledge that the appraiser "may have other comparables that may be more appropriate based on your expertise." [Doc. # 52, Ex. B at 516] He noted to the appraiser that he had used two properties in Columbia at the Board of Equalization hearing.[2] The STC adjusted the appraisal to $525,000.

Tregnago felt his appraisal of the Swartz property was correct and felt that Swartz's appraiser in 2009, again Stone, prepared a defective report. [Doc. # 52, Ex. B at 301, Kribbs Dep.] He was angry about Stone's report and the hearing officer's decision. [Id. at 191,193] Tregnago filed an application for a rehearing with the STC at which he challenged Stone's report. The STC adopted the hearing officer's appraisal. Tregnago filed a complaint against Stone with the Missouri Real Estate Appraisewrs Commission challenging the manner in which Stone prepared the Swartz appraisal. The MREAC declined to take any action against Stone. Swartz alleges that Tregnago and Moore violated ethical rules by "disclosing communications to third

---

[1] Tregnago also hired an appraiser to support his 2009 assessment of the Wilson property which was also appealed. The 2009 appraisal was for $500,000. Wilson appealed and the Commission settled on a valuation of about $365,000. [Doc. # 52 at 19]

[2] Tregnago apparently used Columbia comparables based on Swartz's use of Columbia comparables at the 2007 STC appeal.

parties about their conclusions of their appraisal reviews of Stone's appraisal" of the Swartz property. [Doc. # 52 at 26, ¶ 97] Swartz also claims that Tregnago committed ethics violations by emailing several questions to the Chief Counsel of the STC, Randy Turley, while Swartz' appeal was pending. Swartz asserts that these questions were not limited to permissible procedural questions and amounted to impermissive ex parte communications. Turley testified that he thought his email communications with Tregnago were appropriate. Swartz asserts Tregnago treated him differently than similarly situated taxpayers in his alleged ethics violations and in filing a complaint against Stone.

*The 2010 Personal Property List*

Every year, roughly ten percent of the 12,000 personal property accounts are changed in some manner by the Assessor's Office. Wilma Everhart of the Assessor's Office prepared Swartz's 2010 personal property assessment. She found discrepancies between what Swartz claimed in 2010 and what had been listed as his personal property the year before. This led her to check with the Department of Revenue whose records revealed a number of titled and taxable items that had never been reported by Swartz to Randolph County. Everhart computed values for these items which had not been assessed. On May 25, 2010, Tregnago sent a letter to Swartz "informing Swartz of the 12 items reported by the DOR as still being owned by Swartz and asking for a full explanation of any items not owned by Swartz on January 1, 2010." [Doc. # 47 at 8, ¶ 38][3] Everhart testified at her deposition that Tregnago "always wanted us to do a letter or

---

[3] Those twelve items were: a 2002 Arctic Cat ATV; a 1997 Miami mobile home; a 1996 Nissan automobile; a 1986 vintage mobile home; a 2002 SeaDoo; a 1966 johnboat motor; a 2003 Chevy truck; a 1997 Jeep; a 1999 Mercedes; a 1999 Cobalt cabin cruiser, a 2001 Arctic Car ATV; and a 1997 "Homemade" mobile home.

let the taxpayer know that there's an atrocious amount of value" unaccounted for. [Doc. # 47 at 8, ¶ 39]

On May 25, 2010, Swartz sent a response letter and attachments marked up with Swartz's handwritten notations. On June 14, 2010, Tregnago sent a reply letter stating he needed documentation of the disposition of the items Swartz claimed he no longer owned and informed Swartz that his property item list would be adjusted upon receipt of that documentation. On June 16, 2010, Swartz sent a letter providing addition information regarding the items. In that letter, Swartz claimed to have sent four DOR Form 5049s to the DOR regarding a 202 Arctic Cat ATV; a 2001 Arctic Cat ATV; a 1997 mobile home, and a 1986 mobile home. On July 2, 2010, Tregnago wrote to the DOR and inquired about the titles to the four items for which Swartz claimed to file a Form 5049.

Some of the information Swartz reported on the Form 5049s was inaccurate (eg. dates of sale, purchasers, etc). Some of these items were located in other counties but were not declared by Swartz nor had he paid the property tax on them in the other county before Tregnago made his inquiries (eg. 1999 Cobalt cabin cruiser), some items were sold but Swartz still owed property tax on them for previous tax years (1997 mobile home, 1986 Vintage mobile home), and some were still owned by Swartz and he owed property tax on the items (1997 Jeep).

After reviewing Swartz's responses and documentation, Tregnago removed seven items from the list of twelve undeclared items.

Swartz alleges that Tregnago improperly added multiple items to Swartz's personal property list that he knew or should have know were not owned by Swartz in retaliation for his successful appeals of his 2007 and 2009 real property assessments.

Swartz claims that Tregnago violated Swartz's equal protection rights under the Fourteenth Amendment and his free speech rights under the First Amendment Rights by an "orchestrated campaign of irrational, arbitrary, unlawful, discriminatory, tortious, abusive, harassing, unethical, disparate, and unfair treatment against Swartz ("Swartz Policy") that is motivated by Defendant Tregnago's animosity, baseless hatred, ill will and malice toward Swartz: and/or in retaliation for Swartz's exercise of his First Amendments rights to pursue the 2007 and 2009 Appeals, the 2011 Case, publically speaking against Defendant Tregnago, or opposing Defendant Tregnago politically for reasons wholly unrelated to any legitimate state objective." [Doc. # 38, Amend. Compl. at ¶ 41and ¶ 57]

Tregnago has moved for summary judgment.

***Legal Standard***

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the

plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Discussion*

*Equal protection claim*

Equal protection jurisprudence typically concerns governmental classifications or actions which affect some groups of citizens differently than others. Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 601 (2008). However, an "equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" Id.

Swartz does not asserts that he is a member of a class subjected to discrimination. Instead, he asserts that he is a "class of one" who Tregnago treated differently and arbitrarily based on his personal vendetta against Swartz. To establish a "class of one" equal protection claim, a plaintiff must show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000). In Engquist, the United States Supreme Court held that "the class-of-one theory was a poor fit in a context that involved discretionary decisionmaking." Flowers v. City of Minneapolis, Minn., 558 F.3d 794, 799 (8th Cir. 2009) (internal quotations omitted). In discussing the problem of recognizing a "class of one" equal protection claim involving discretionary decisions made by government officials, the Court stated that

> [t]here are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like

circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

Engquist, 553 U.S. at 603-604.

Tregnago is the duly elected Assessor of Randolph County. The very nature of an assessor's job is to exercise discretionary determinations of the value of taxpayer's real and personal property. In order for Swartz to establish a claim on an equal protection violation against Tregnago, he must present evidence Tregnago intentionally treated Swartz differently from other similarly situated taxpayers and that there was no rational basis for the difference in treatment.

The starting point of Swartz's claims is Swartz's accusation that Tregnago was upset that Swartz prevailed in the appeal of his 2007 real property assessment. Swartz asserts that Tregnago misrepresented in the appeal process that he spoke with Wilson about the value of the Wilson property. However, there is no dispute that Tregnago relied on his own valuation of the Wilson property in assessing Swartz's 2007 assessment. In doing so, Tregnago was performing his job and exercising his discretion as the county appraiser. Moreover, his reason for using the Wilson property as a comparable was rational and within his discretion. The fact that Swartz disagreed with Tregnago's appraisal and ultimately won the appeal does not establish that Tregnago acted irrationally.

It is also undisputed that Tregnago was upset with the method Swartz's appraiser, Stone, used to value Swartz's property. But there is no constitutional violation for believing Stone's

appraisal methodology was improper.

Swartz claims that Tregnago did not treat other taxpayers in a like manner. To support the allegation that Tregnago was only targeting Swartz, Swartz offers the deposition testimony of an employee of the Randolph County Assessor's Office, Dawn Kribbs, that Tregnago was challenging Swartz's property assessments because he was "so pissed." [Doc. # 52, Ex. B at 290 - 291, Kribbs Dep.] Yet Kribbs' full statement was that Tregnago was "so pissed" and that Kribbs was tired of Tregnago complaining ["quacking"] about Swartz *and other taxpayers*. [Id. at 291] Kribbs stated that Tregnago was checking with other counties to see if Swartz was being "taxed for his stuff, and *other taxpayers even*." [Id.] According to Kribbs, Tregnago was upset about the outcome of the Swartz appeal because he felt his appraisal of the Swartz residence was correct and disagreed with Stone's assessment of the value of Swartz's property. [Id. at 290 - 299]

Swartz also attempts to support his claim that Trenago was biased against Swartz and upset with the 2007 appeal by selectively quoting the deposition testimony on Wilma Everhart of the Assessor's Office staff. When asked if Tregnago was upset that the appeal was filed, Swartz quotes Everhart's reply as "we've had other people that appeal their values, and this is the only one I've ever seen with such a problem. I don't know what else to say." [Doc. # 52 at 17] Yet that quote left out the first sentence of Everhart's reply which was "[Tregnago] [w]asn't more disgruntled with that than he would have been with anybody else." [Doc. # 52, Ex. B at 344, Everhart's Dep.] When asked in the follow up question whether Tregnago was upset that he lost the Swartz appeal, Everhart replied, "Well I don't think so. It's just the way it happens you know. You do what you do and its just a job. You've go to try to – I think he's always looked at

it that way." [Id.]

In his own deposition, Swartz testified that he believed that Tregnago took the actions he did at Swartz's 2007 appeal because Tregnago had a high level of confidence in his work and wanted to prove that he was right in his assessment of Swartz' residence. [Doc. # 47, Ex. A at 297 - 298, Swartz Dep.]

Swartz has failed to produce evidence which would support his claim that Tregnago was irrationally appraising Swartz's real property in 2007 and treating Swartz differently that other taxpayers out of a personal animus towards Swartz. Swartz's evidence, when read in context, indicates that Tregnago believed his assessments were correct and did not treat Swartz differently than other taxpayers who were similarly situated with Swartz.

Similarly, Tregnago's 2009 assessment of Swartz's house and 2010 assessment of personal property were discretionary decisions and rationally based. The 2009 assessment was based on the Trails End property less than a mile from Swartz's house. That house sold for $760,000. Based on that sale, it was not irrational for Tregnago to increase the value of Swartz's house from from $438,000 to $584,098. Moreover, although Swartz prevailed again on his appeal, the final appraisal of his property after the appeal was $525,000 which supports Tregnago's discretionary opinion that the property was undervalued. The fact that Swartz disagreed with Tregnago's valuation does not make that valuation irrational.

Nor does fact that Tregnago challenged Stone's methodology of appraising Swartz's property indicate a personal animosity towards Swartz. Swartz's claims of Tregnago's ethical violations, whether true or not, do not rise to the level of constitutional violations. Rather than supporting a claim of irrational animus towards Swartz, such evidence supports Swartz's own

belief that Tregnago was a confident assessor who wanted to prove his valuations were correct.

The same is true for the 2010 personal property list. The Assessor's Office normal processing of personal property forms noted an anomaly with Swartz's claimed personal property. A routine check with the Department of Revenue revealed number of titled and taxable items that had never been reported by Swartz to Randolph County. It's the assessor's job to resolve such discrepancies and that is exactly what Tregnago did. He requested verifiable information from Swartz, adjusted the personal property list, and assessed Swartz accordingly. It is undisputed that Tregnago revealed that Swartz had taxable personal property which he had not declared which was subject to assessment. Tregnago performed his duty based on rational information and used his discretionary authority to do so. Just because Swartz disagreed with Tregnago's decisions does not make them irrational.

As in the 2007 appeal, Swartz has not presented any evidence that Tregnago treated Swartz differently that similarly situated taxpayers in 2010. Swartz has not identified any particular taxpayer similarly situated to Swartz who received preferential real property assessment treatment from Tregnago.[4] Nor has he presented evidence about a similarly situated taxpayer like Swartz who had an extensive list of undisclosed taxable personal property listed with the Department of Revenue that Tregnago treated differently.

Because Swartz has failed to establish evidence that, in exercising his discretionary authority, Tregnago intentionally treated Swartz differently from other similarly situated

---

[4] One of the facts Swartz raises in an attempt to support his claim that he was treated differently is that Tregnago hired a appraiser for Swartz's 2009 assessment appeal. Yet it is undisputed that Tregnago hired an appraiser for the 2009 assessment appeal of the Wilson property.

taxpayers and that there was no rational basis for the difference in treatment, summary judgment will be granted to Tregnago on Swartz's equal protection claim.

*First Amendment Claim*

Swartz bases his First Amendment claim on substantially the same evidence he asserted his equal protection claim. Swartz asserts that Tregnago selectively targeted Swartz for inflated and irrational property assessments in retaliation for Swartz's appeals of his 2007 and 2009 real property assessments and for complaining publically about Tregnago and opposing him politically. As discussed above, I find that Swartz has not produced evidence to show Tregnago's 2007, 2009, and 2010 assessments were irrational.

To establish a First Amendment retaliation claim, Swartz must show that he: (1) engaged in a constitutionally protected activity; (2) that Tregnago's adverse action caused Swartz an injury that would chill a person of ordinary firmness from continuing in that activity; and (3) that the adverse action was motivated in part by the exercise of his constitutional rights. Naucke v. City of Park Hills, 284 F.3d 923, 927-928 (8th Cir. 2002).

Swartz has failed to present evidence that he has been injured. Like any other taxpayer, he had the right to and did challenge Tregnago's appraisals. Tregnago's appraisals were rationally based and made within his discretionary authority. Swartz followed the normal course that any taxpayer has in seeking relief through appeals. He got the relief he sought in some of the appeals and did not get the relief he sought in other appeals.

Moreover, a plaintiff must show that an alleged retaliatory motive was not only a substantial factor but was the "but-for" cause of the defendant's actions. Baribeau v. City of Minneapolis, 596 F.3d 465, 481 (8th Cir. 2010). Swartz's evidence which might support a

finding of <u>some</u> retaliatory animus in Tregnago's mind is insufficient to support a finding of a but-for causal connection. It was Tregnago's job and his statutory responsibility to fairly tax all taxpayer's property, including Swartz's. It is undisputed that Tregnago had a high level of confidence in his work and wanted to prove that he was right in his assessments. There is no evidence in this case to support a claim that Tregnago would not have followed the same course of action absent any animus towards Swartz. The fact that Swartz did in fact owe additional taxes in 2009 and 2010 prevents a finding that Tregnago's alleged retaliatory animus was the but-for cause of his actions. As a result, I find that Tregnago is entitled to summary judgment on Swartz's First Amendment claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Richard Tragnago's motion for summary judgment [#46] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 13th day of February, 2015